UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JERMAINE KENT,

    Plaintiff,

v.                                              Case No. 6:15-cv-880-Orl-37TBS

ZACHARY BROWN,

    Defendant.

## ORDER

This cause is before the Court on the following:

1. Motion for Summary Judgment By Defendant Brown (Doc. 60), filed February 28, 2017;

2. Plaintiff's Motion and Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment (Doc. 71), filed April 21, 2017; and

3. Reply Memorandum of Law by Defendant Brown (Doc. 72), filed April 26, 2017.

### I.    BACKGROUND[1]

The events leading to this action arose late in the evening of August 22, 2011, when

---

[1] The following facts reflect the Plaintiff's "best case"—that is, the version of facts that the Court must consider at this stage of the proceedings. *See Robinson v. Arrugueta*, 415 F.3d 1252, 1257 (11th Cir. 2005); *see also Walker v. City of Riviera Beach*, 212 Fed. App'x 835, 837 (11th Cir. 2006).

– 1 –

two deputies employed with the Brevard County Sheriff's Office—Juan Vargas ("**Vargas**") and Zachary Brown ("**Brown**")—spotted Plaintiff Jermaine Kent ("**Kent**") riding a dirt bike while holding onto the driver's window of a moving vehicle ("**Vehicle**"). (*Id.* ¶ 5; Doc. 1, ¶ 7.) Without triggering the lights or sirens of their unmarked and darkly tinted car ("**Car**"), Vargas and Brown drove through a stop sign and begin to approach Kent at a high rate of speed. (Doc. 69-1, p. 1; Doc. 67, pp. 22, 26.) Unaware of who was in the Car, Kent believed he was about to be robbed, so he dropped his bike and ran. (*Id.* at 22, 25.)

Exiting the Car, Brown pursued Kent on foot. (*Id.* at 27.) Once Plaintiff realized that he was being chased by law enforcement, he immediately stopped, fell to his knees, put his hands in the air, and was completely compliant.[2] (Doc. 69-1, p. 1.) Despite Kent's compliance, Brown tackled him, causing Kent to fall to the ground with his face situated on a mound of fire ants. (*Id.*) Once Kent informed Brown that his face was on an ant pile Brown responded by telling him to, "put [his] fucking face in the ant moun[d]." (*Id.*) Brown then "purposefully" held Kent's face in the ant mound, causing Kent to suffer hundreds of ant bites to his face, ears, neck, chest and eyes. (*Id.*; Doc. 60-5.) Both Vargas and Brown subsequently tased Kent as he lay facedown. (Doc. 69-1, pp. 1–2;

---

[2] The Court notes that Kent's deposition testimony sometimes differs from the statements contained in his affidavit. For example, in his affidavit, Kent alleges that he stopped running immediately upon realizing that law enforcement was pursing him. (Doc. 69-1, p. 1.) During his deposition, however, Kent testified that while he initially believe he was about to be robbed, "[w]hen the [police] lights hit, [he] knew it was the police; but [he] kept running, and [he] ran behind [a] house" before surrendering. (Doc. 67, p. 22.)

– 2 –

Doc. 67, p. 28.) Kent was not resisting, threatening, fighting, or engaging in any other unlawful behavior when Brown held his head down in the ant mound or when he was tased. (*Id.* at 22; Doc. 69-1, p. 1.)

Based on this incident, Kent was arrested and charged with resisting an officer without violence ("**Resisting Charge**") in violation of Florida Statute § 843.02, a first degree misdemeanor. (Doc. 60-4.) He entered a plea of *nolo contendere* and was adjudicated guilty on November 8, 2013. (Doc. 60-4.) Kent subsequently brought this 42 U.S.C. § 1983 excessive force action against Vargas and Brown in their individual capacities. (Doc. 1 ("**Complaint**").)

Kent served the Complaint on Brown on June 22, 2015 (*see* Doc. 15), but failed to timely serve Vargas (*see* Docs. 30, 31). The Court, therefore, dismissed this case as to Vargas pursuant to Local Rule 3.10, for lack of prosecution. (*Id.*) Brown, the only remaining defendant, now moves for summary judgment, invoking defenses under the doctrine of qualified immunity and *Heck v. Humphrey*, 512 U.S. 477 (1994). (Doc. 60 ("**Motion**").) Kent has responded (Doc. 71), and Brown has replied. (Doc. 72.) This matter is now ripe for the Court's adjudication.

## II. LEGAL STANDARDS

### A. Summary Judgment

A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(c); *see also, Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In resolving motions for summary judgment, courts must not make credibility assessments or weigh conflicting evidence. *See Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 919 (11th Cir. 1993). Rather, courts must: (1) view the record evidence in the light most favorable to the non-moving party; and (2) draw all reasonable inferences in favor of the non-moving party. *See White v. Pauly*, 137 S. Ct. 548, 550 (2017). If a reasonable fact finder could draw more than one inference from the facts and find that at least one of those inferences creates an issue of material fact, the court must not grant summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

### B.    Qualified Immunity

"Qualified immunity shields government officials from liability for civil damages for torts committed while performing discretionary duties unless their conduct violates a clearly established statutory or constitutional right." *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008). "[T]o receive qualified immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).

"Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Id.*; *see also Terrell v. Smith*, 668 F.2d 1244, 1250 (11th Cir. 2012). To do so, the plaintiff must make a two-part showing. First, he must demonstrate that the facts of the case evidence a violation of a constitutional right. *See Pearson v. Callahan*, 555 U.S. 223, 232

(2009). Second, he must demonstrate that the constitutional right was "clearly established" at the time of the putative misconduct. *Id.*

A constitutional right is "clearly established" if precedent places the "constitutional question beyond debate." *See Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015). The pertinent precedent must be "particularized" to the facts of the case. *See Pauly*, 137 S. Ct. at 552; *see also Brosseau v. Haugen*, 543 U.S. 194, 599–600 (2004) (emphasizing that the qualified immunity inquiry must relate to specific facts—not general propositions). This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law, the unlawfulness must be apparent. *Hope v. Pelzer*, 536 U.S. 730, 739–741 (2002) (finding that officials can still be on notice that their conduct violates established law even in "novel factual circumstances").

Following these principles, the U.S. Court of Appeals for the Eleventh Circuit has held that to prove that the law was clearly established, a plaintiff may:

> point to either (1) earlier case law from the Supreme Court, [the Eleventh Circuit], or the highest court of the pertinent state that is materially similar to the current case and therefore provided clear notice of the violation[,] or (2) general rules of law from a federal constitutional or statutory provision or earlier case law that applied with 'obvious clarity' to the circumstances, establishing clearly the unlawfulness of the [d]efendant[']s conduct.

*Long v. Slaton*, 508 F.3d 576, 584 (11th Cir. 2007) (citation omitted).

### III.   ANALYSIS

In his Motion, Brown first argues that Kent's excessive force claim is barred under

the doctrine of qualified immunity. (Doc. 60, pp. 5–11.) He then argues that Kent's claim is barred by *Heck* because, if proven, it would necessarily undermine the validity of his plea and conviction. The Court will addresses each of these arguments in turn below. (*Id.* at 11–12.)

A. **Qualified Immunity**

Kent does not dispute that Brown was acting within the scope of his discretionary authority at the time of his arrest. (*See generally* Doc. 71.) The Court, therefore, considers whether: (1) the officers violated Kent's Fourth Amendment rights to be free from excessive force, and (2) whether those rights were clearly established.

A police officer's use of force violates the Fourth Amendment if it is objectively unreasonable in light of the circumstances. *Graham v. Connor*, 490 U.S. 386, 395–97 (1989). The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. *Long*, 508 F.3d at 579–580. Whether the force is reasonable hinges on the facts and circumstances of each case, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396.

Kent avers that Brown violated his clearly established Fourth Amendment right to be free from the use of excessive force by: (1) deliberately and maliciously exposing him to fire ants during his arrest; and (2) tasing him while he lay on the ground in a non-threatening, non-resistant manner. (Doc. 1, ¶¶ 22–31). With respect to Kent's

exposure to fire ants, Brown contends that he is entitled to summary judgment because there is no evidence indicating that he: (1) deliberately and unnecessarily expos[ed] [Kent] to fire ants;" or (2) "intentionally, maliciously and sadistically put or kept Plaintiff in a fire ant pile for an inappropriate period of time." (Doc. 60, p. 9.) Brown further argues that there is "no credible evidence that the length of time required to apprehend and secure [Kent] was unreasonable or unnecessarily drawn out." (*Id.* at 9–10.)

With respect to Kent's tasing, Brown argues that he is entitled to qualified immunity because there is no evidence that he tased Kent. (Doc. 60, p. 10.) Brown also argues that Kent's testimony "clearly implies that he was trying to lift his head up during the handcuffing process," and Kent's actions could, "from an objectively reasonable standpoint," be viewed as continued resistance. (Doc. 60, p. 10.)

The Court rejects Brown's arguments, as they rest on facts viewed in the light most favorable to Brown—not Kent. Under Kent's version of the facts: (1) he initially fled from Brown, but eventually surrendered by stopping, falling to his knees, and putting his hands in the air (Doc. 69-1, p. 1); (2) he posed no potential danger, did not attempt to flee, and did not actively resist (*id*); despite Kent's compliance, Brown tackled him, causing him to fall to the ground with his face positioned on a mound of fire ants (*id*); (4) Kent informed Brown that his face was on the ant mound, at which time, Brown intentionally held Kent's face in the ant mound and uttered expletives (*id*); (5) Kent suffered hundreds of ant bites to his face, ears, neck, chest and eyes (*id*); and (6) Brown subsequently tased Kent without any justification (*id.* at 2; Doc. 67, p. 28).

Based on these facts, the Court finds, for the purpose of resolving the Motion, that Brown's actions violated Kent's Fourth Amendment right to be free from excessive force.[3] Further, a review of the Eleventh Circuit's pertinent case law reveals that a reasonable officer in Brown's position would have been on notice that holding Kent's face down in a pile of fire ants and tasing him while he was compliant would constitute excessive force. *Saunders v. Duke*, for example, establishes that applying "gratuitous force" to a non-resistant and non-threatening suspect after he has surrendered is objectively unreasonable under the Fourth Amendment. *See* 766 F.3d 1262, 1268, 1270 (11th Cir. 2014).

Specifically, in *Saunders*, the plaintiff met with individuals at a gas station and sold oxycodone pills to an undercover officer and a confidential informant. *Id.* at 1265. After the sale was completed, state law enforcement agents surrounded the plaintiff with their weapons drawn and ordered him to place his hands on the windshield of the car and not move. *Id.* Saunders "immediately complied" with their commands. *Id.* An agent then pulled Saunders onto the hot pavement, handcuffed him, and left him lying flat on his stomach. *Id.* While prone, Saunders informed the agents "that he was 'getting burnt'" and attempted to hold "his face up off the hot pavement." *Id.* Although Saunders posed no threat to anyone, offered no resistance, and made no attempt to flee, one of the agents

---

[3] *See Perry v. Post*, No. CIV 04-2842-PHX-JAT, 2006 WL 3333092, at *4–5 (D. Ariz. Nov. 16, 2006) (concluding that it was objectively unreasonable and a violation of the Fourth Amendment for officers to drag a compliant arrestee to an "ant hill and then taunt[] [him] about being bitten while he lay there").

"slammed his head into the pavement with extreme force." *Id*. at 1265–66. Saunders "suffered lacerations, injuries to his teeth and jaw, damage to his left eardrum, and emotional distress due to his head striking the pavement." *Id.*

Saunders subsequently filed a § 1983 action against the defendant agents, alleging excessive force in violation of the Fourth Amendment. *Id.* at 1265. The district court granted the defendant agents' motion to dismiss based on qualified immunity, reasoning that the use that "use of force during an arrest is not clearly unlawful if an arresting officer is faced with an uncooperative suspect or if an officer perceives resistance in a volatile situation." *Id.* at 1266. The district court further reasoned that, when Saunders lifted his head off the pavement, a reasonable officer in the defendant agents' position could have believed that Saunders was resisting arrest thereby justifying the use of force to return his head to the pavement. *Id.* at 1267.

In the appeal followed, the Eleventh Circuit reversed the district court's ruling and remanded the case, finding that the defendant agents were not entitled to qualified immunity. *Id.* at 1270. In so holding, the Eleventh Circuit reasoned that the district court failed to read the allegations of the complaint in the light most favorable to Saunders, who alleged that "he did not resist and did not do anything to threaten the agents or anyone else." *Id.* at 1269. The Eleventh Circuit held that "even if the complaint could be read to allege that . . . Saunders disobeyed an order by lifting his head off the hot pavement, that minor transgression does not mean that the force allegedly used was a constitutionally permissible response." *Id*. In conclusion, the Eleventh Circuit stated that

Saunders's allegations, if true, demonstrated that the defendant agents' force "was unnecessary, disproportionate, and constitutionally excessive." *Id.* at 1268.

In addition to *Saunders*, several other Eleventh Circuit cases echo the broad constitutional principle that applying gratuitous force to a suspect who has surrendered and no longer poses a threat is objectively unreasonable and violates the Fourth Amendment. *See, e.g., Hadley v. Gutierrez*, 526 F.3d 1324, 1333–34 (11th Cir. 2008) (concluding that an officer used excessive force when he punched an individual in the stomach while the individual was handcuffed and not struggling or resisting); *Lee v. Ferraro*, 284 F.3d 1188 (11th Cir. 2002) (slamming a non-resisting criminal suspect's head onto hood of a car constituted excessive force); *Slicker v. Jackson*, 215 F.3d 1225, 1233 (11th Cir. 2000) (denying qualified immunity to officers who purportedly kicked and beat a nonresisting, handcuffed suspect).

Following this Eleventh Circuit jurisprudence, the Court concludes that at the time of Kent's arrest it was clearly established that the type of force Brown used was objectively unreasonable. Accordingly, qualified immunity is inappropriate and Brown's Motion is due to be denied.

**B.** *Heck v. Humphrey*

Relying on *Heck*, Brown argues that Kent's claims, if proven, would undermine the validity of his conviction because:

> the arrest report and information, which must have provided the factual basis for [Kent]'s plea, states that [Kent] "actively ran away from law enforcement" and that after he was caught and taken to the ground "he actively resisted and refused to

> comply with commands to place his hands behind his back" and that . . . Vargas then deployed his Taser and "conducted a drive stun to the lower back of [Kent]" and at that point he complied and was secured.

(Doc. 60, p. 12 (citing Doc. 60-2.) The Court rejects Brown's argument.

In *Heck v. Humphrey*, the U.S. Supreme Court held that a § 1983 suit for damages must be dismissed if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence," unless the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. 512 U.S. 477, 487 (1994). The damages action should not be dismissed, however, if the action (even if successful) would not demonstrate the invalidity of any outstanding criminal judgment. *See id*; *see also Dyer v. Lee*, 488 F.3d 876, 879–80 (11th Cir. 2007) (explaining that, as long as it is possible that a § 1983 suit would not negate the underlying conviction, then the suit is not barred by *Heck*).

Here, is not clear that a judgment in Kent's favor would "necessarily imply the invalidity of his conviction or sentence." *Heck*, 512 U.S. at 487. While the record is clear that Kent pled *nolo contendere* to the Resisting Charge, there is a lack of evidence indicating which of Kent's actions constituted the basis for his plea. (*See generally* Doc. 60-4.) It is therefore entirely possible that Kent pled only to the actions preceding his surrender and arrest. In fact, Kent admits that at some point he ran from Brown knowing that he was a law enforcement officer. (*See* Doc. 67, pp. 22–23.) This

– 11 –

admission is consistent with Kent's statements that once he became fully compliant, Brown unreasonably used excessive force to effectuate his arrest. (*Id.* at 23–24.)

Therefore, because the record does not provide the factual basis for Kent's plea, and there is still a construction of the facts that would allow his conviction to stand, the Court concludes that *Heck* does not apply.

### IV.    CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that the Motion for Summary Judgment By Defendant Brown (Doc. 60) is **DENIED**.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on May 30, 2017.



ROY B. DALTON JR.
United States District Judge